IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

UNITED STATES OF AMERICA     *

v.     *     **Case No. 8:13-cr-00623-PWG-2**

CHRISTOPHER PALMER     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Christopher Walter Palmer's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 132.[1] Mr. Palmer is currently incarcerated at Allenwood FCI in Allenwood, Pennsylvania, where he is serving a sentence of 120 months after pleading guilty to one count of conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine and 28 grams or more of cocaine base, in violation of 21 U.S.C. § 846, and one count of possession of a machine gun, in violation of 18 U.S.C. § 922(o)(1). Def.'s Mot., 2, ECF No. 132.  In his motion, he requests that the Court release him due to personal health risks associated with the COVID-19 pandemic. I have reviewed all of the materials[2] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons discussed below, Mr. Palmer's motion is GRANTED with conditions.

## BACKGROUND

On April 25, 2014, Mr. Palmer executed a plea agreement for the above counts. Plea Agreement, ECF No. 47. At sentencing, I determined that Mr. Palmer's Guideline Range was 97 to 121 months as to count 1 and 120 months as to count 2. Statement of Reasons, ECF No. 82. I sentenced Mr. Palmer to a 120-month term of imprisonment followed by five years of supervised

---

[1]     Mr. Palmer filed an initial Motion for Compassionate Release *pro se*. ECF No. 124.
[2]     The motion is fully briefed.  *See* ECF Nos. 132, 137, and 140.

release. Judgment, 2–3, ECF No. 81. His projected release date is April 17, 2023. Def.'s Mot., 2; bop.gov/inmateloc/ (last visited July 26, 2021). Mr. Palmer has been diagnosed with sickle cell anemia and has experienced deep vein thrombosis (blood clots in the veins) and pulmonary embolism. Def.'s Mot., 3–4; Ex. B to Def.'s Mot., 102, ECF No. 132-1. No exact date is listed in the medical records, but in late December, 2020, Mr. Palmer tested positive for COVID-19 and afterwards, on January 7, 2021, received his first dose of the Moderna COVID-19 vaccine. Gov.'s Opp., 15, ECF No. 137; Ex. B to Gov.'s Opp. (BOP Immunization Note 1), ECF No. 137-2. Mr. Palmer received his second dose of Moderna's vaccine on February 4, 2021. Ex. C to Gov.'s Opp. (BOP Immunization Note 2), ECF No. 137-3. The BOP facility where Mr. Palmer is detained, Allenwood Medium FCI, is currently experiencing zero active COVID-19 cases among inmates and zero active cases among staff. https://www.bop.gov/coronavirus/index.jsp (last visited July 26, 2021).

## DISCUSSION

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. High,* 997 F.3d 181, 185 (4th Cir. 2021). However, there is an exception when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Here, Mr. Palmer requests a modification of his sentence for "compassionate release" under the First Step Act, as amended.[3] The First Step Act permits a defendant to petition a federal court directly after exhausting all administrative rights whenever "extraordinary and compelling

---

[3]      The "compassionate release" provision of the 1984 First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence only upon a motion by the Director of the BOP. In 2018, Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the Court to act on a motion for compassionate release filed by a defendant.

reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the statute, I must do the following: (1) determine whether the petitioner has fully exhausted all administrative remedies or 30 days have passed since the Bureau of Prisons ("BOP") received the request; (2) determine whether "extraordinary and compelling reasons" warrant a sentence reduction that is "consistent" with applicable policy statements issued by the Sentencing Commission; and (3) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

## I.      Administrative Exhaustion

A court may only consider a prisoner's motion for compassionate release if the prisoner has "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf" or if 30 days have passed since the warden of a defendant's facility received such a request. 18 U.S.C. § 3582(c)(1)(A). This condition is satisfied. Mr. Palmer exhausted his administrative remedies in requesting and being denied a reduction in sentence from the warden of FCI Allenwood Medium. Def.'s Mot., 2. The Government also agrees that this condition is satisfied. Gov.'s Opp., 15.

## II.     Extraordinary and Compelling Reasons

Second, I must determine whether "extraordinary and compelling reasons" warrant a sentence reduction and that such a reduction is "consistent" with Sentencing Commission policy statements. 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit has found that there is no applicable policy statement that explicitly governs a defendant's motion for compassionate release. *High*, 997 F.3d at 186 (citing *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020)). Additionally, I join with the majority of courts finding that 18 U.S.C. § 3582(c)(1)(A)(i) as amended grants courts with independent discretion to decide whether there are "extraordinary and compelling reasons"

to modify a sentence, and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, Criminal No. ELH-18-72, 2020 WL 2614816, at *7-9 (D. Md. May 22, 2020) (holding the same and collecting cases). As the Fourth Circuit observed, district courts have discretion to independently assess whether circumstances meet the extraordinary and compelling threshold. *McCoy*, 981 F.3d at 281-82. More specifically, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citing *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). However, while not binding, the Sentencing Commission's policy statements may provide useful guidance. *Id.* at 279 (citing *United States v. Bryant*, Crim. No. 95-202-CCB-3, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020), *aff'd sub nom*. *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020)).

The Sentencing Commission's policy statements in U.S.S.G. § 1B1.13 offer guidance here.[4] Section 1B1.13 recites the language of 18 U.S.C. § 3582(c)(1)(A) before it was amended in 2018, including the statement that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G § 1B1.13(2). The commentary to the policy statement provides four examples of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." U.S.S.G. § 1B1.13 app. note 1(A)–(C); *see also McCoy*, 981 F.3d at 280-81.

---

[4] The Government relied on the § 1B1.13 criteria to argue that Mr. Palmer does not present extraordinary and compelling circumstances. Gov.'s Opp., 6. But as I have repeatedly held, and as the Fourth Circuit affirmed in *McCoy*, the § 1B1.13 categories are not binding in the compassionate release context. *McCoy*, 981 F.3d at 284.

Mr. Palmer requests compassionate release due to health concerns as a result of the COVID-19 pandemic and his sickle cell anemia, noting that the CDC has found that people with sickle cell disease are at an increased risk of severe illness from COVID-19. Def.'s Mot., 3. He also points to how he has previously experienced complications as a result of deep vein thrombosis and pulmonary embolism. *Id.* at 3–4. The Government contends that Mr. Palmer failed to show either that he suffered long-term effects of COVID-19 after contracting it or that he experienced side-effects of the vaccination, and thus should not be released. Gov.'s Opp., 15.

The Fourth Circuit notes that "COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal." *High*, 997 F.3d at 185. An inmate can present an extraordinary and compelling reason related to COVID-19; district courts have discretion on how to resolve such motions. *Id.* In this Court, judges have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where defendants have serious medical problems that placed them at high risk for complications if they contracted COVID-19. *See, e.g.*, *United States v. Jennings*, Case No. 13-cr-46-PWG, 2020 WL 4748462, at *4 (D. Md. Aug. 17, 2020) (citing cases in this Court and other courts, and the application to multiple serious conditions); *but see United States v. Taylor*, No. 17-cr-0268-PWG, 2020 WL 6322620 (D. Md. Oct. 28, 2020), *appeal dismissed*, No. 20-7632, 2021 WL 1784092 (4th Cir. Jan. 13, 2021) (finding that hypertension and high BMI were not sufficient to warrant prisoner's release when the spread of coronavirus in his BOP facility was under control, and prisoner did not show that he would not receive appropriate treatment at his BOP facility or a nearby medical facility if he were to contract the virus). Certainly, the situation regarding COVID-19 is rapidly evolving, and new information

about the virus and risk factors must be taken into account, as well as the changing conditions at prison facilities, for better or worse.

Mr. Palmer has demonstrated that he has multiple serious medical conditions that place him at a high risk for complications from COVID-19. *E.g.* Ex. B to Def.'s Mot., 4. As Mr. Palmer notes in his motion, the CDC has determined that individuals with sickle cell disease are more likely to become severely ill from COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 26 2021); Def,'s Mot., 3. Mr. Palmer's sickle cell disease is further compounded by his additional medical issues of deep vein thrombosis and pulmonary embolism. Def,'s Mot., 3–4.

But I also note that, in assessing whether he presents extraordinary and compelling circumstances, Mr. Palmer has received both doses of the COVID-19 vaccine, Gov.'s Opp., 15, and this Court does take vaccination status into account when evaluating a motion for compassionate release. Vaccines are effective at preventing COVID-19, but because effectiveness is not guaranteed and there are unknowns regarding the extent and duration of the vaccine's protection, there may still be concern for particular individuals' increased risk of severe illness, even if fully vaccinated. *See United States v. Spriggs*, No. CR CCB-10-364, 2021 WL 1856667, at *2–3 (D. Md. May 10, 2021) (finding a petitioner eligible for compassionate release after receiving one dose of the vaccine and noting that "a vaccine does not negate that his underlying health conditions make him eligible"). It is impossible to predict the impact of the various COVID-19 vaccines on future strains of this virus, just as it is impossible to predict the impact of COVID-19 on Mr. Palmer's specific medical issues. But given the increased risk of COVID-19 complications due to Mr. Palmer's sickle cell disease, combined with his additional serious

medical issues and the unknown potential effects of the disease based on his unique medical history, I find that Mr. Palmer clears the extraordinary and compelling circumstances threshold.

The risk of severe illness, however, does not end the inquiry. These concerns are further considered in the analysis of the sentencing factors.

## III.    Sentencing Factors

A finding of "compelling and extraordinary reasons" is a necessary but not sufficient condition for compassionate release. I must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a).

Here, the Government argues that the factors do not support release and that Mr. Palmer remains a danger to the community. Gov.'s Opp., 16. The Government points to the seriousness of Mr. Palmer's offense, which involved possession and transfer of firearms, as well as the fact that he has committed multiple infractions while imprisoned—notably, possession of three weapons in April 2019 and possessing suboxone, an illegal substance, in January 2020. Gov.'s Opp., 17; Ex. D to Gov.'s Opp. (BOP Disciplinary Record), ECF No. 137-4.

As to the first factor, Mr. Palmer's offense of conspiracy to distribute and possess cocaine, culminating in the exchange of firearms for narcotics, was severe. However, he has completed over 92 months of his current 120-month prison sentence, approximately 76% of his term of incarceration. *See* Def.'s Mot., 5. And as Judge Chuang recently noted, COVID-19 has

"sufficiently increased the severity of the sentence beyond what was originally anticipated." *Id.* (quoting *United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020)). And while the Government observes that Mr. Palmer has committed several infractions in prison, the BOP Disciplinary Record fails to specify the nature of the weapons involved in the infraction and the Government does not present any evidence that the weapons were used.

Further, Mr. Palmer has limited, though not insignificant, criminal history. According to the presentence investigation report, he has a 2007 conviction pursuant to a guilty plea in Prince Georges County, MD District Court for CDS: Possession of Paraphernalia. Presentence Investigation Report, 7, ECF No. 79. He also has a 2008 condition in the same court, also pursuant to a guilty plea, for carrying a handgun and possession of a regulated firearm for which he served 111 days in custody. *Id.* Those convictions are over a decade old and did not carry nearly as harsh of a sentence as the sentence in the instant case. In addition, Mr. Palmer plans to live with his grandmother in Clinton, MD and has been offered gainful employment as an electrician for a company operated by his cousin. Def.'s Mot., 6. Mr. Palmer's counsel contends that he has been contacted by many members of Mr. Palmer's family to offer support, and that upon his release, Mr. Palmer will have a close-knit family who will support him with his various needs. *Id.* Finally, Mr. Palmer has completed educational coursework while incarcerated and appears to have earned his GED in 2018. Ex. B to Def.'s  Mot., 119. It is not apparent from the record before me that Mr. Palmer continues to present a danger to the community, as the Government contends. I find that the recent positive developments as to Mr. Palmer in the record before me militate in his favor when assessing both the first and second § 3553(a) factors, which are the most relevant here.

As to the guidelines range, I found Mr. Palmer's offense level and criminal history as to count 1 combined for a range of 97 to 121 months.  Statement of Reasons, 1.  He is only six months

away from completing the low end of that range. Even with a mandatory minimum sentence of 120 months as to count 2, combined with a period of home confinement and what is approaching 18 months of abnormally harsh conditions due to the pandemic, I am satisfied that the time Mr. Palmer has served—and will serve—is as severe as the guidelines intend.

Although it is admittedly a close call, considering all of the circumstances, I find that weighing the § 3553(a) factors points towards granting release rather than continued incarceration in an FCI setting.

While I find that Mr. Palmer's medical conditions combined with the § 3553(a) factors are consistent with release from an FCI setting, given the amount of time still remaining on Mr. Palmer's sentence and consistent with the nature of the offense, a continued period of home confinement for a period of 18 months (with work release to any employment approved by the probation officer) is appropriate. Accordingly, Mr. Palmer will be supervised by the Probation Department—thus reflecting the seriousness of the offense—under strict conditions of supervised release, which will assure a safe transition to the community. If he violates these conditions, he risks being returned to prison for a significant amount of time, thus diminishing the likelihood of recidivism while also promoting rehabilitation. He has both a place to live and employment upon his release.

## CONCLUSION

The Court recognizes the seriousness of the COVID-19 pandemic and the risks that Mr. Palmer faces based on his pre-existing conditions. His underlying illnesses are serious and place him at a greater risk of severe illness of COVID-19, and release is consistent with the § 3553(a) factors. Therefore, Mr. Palmer's motion for compassionate release is granted with conditions.

**ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is this <u>29th</u> day of July 2021, hereby ORDERED that Mr. Palmer's Emergency motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 132) is GRANTED with conditions.  Mr. Palmer shall be released upon completing a 14-day quarantine and the United States Probation Office's approval of the home where he shall be placed on home confinement for 18 months as a condition of supervised release.


_____/S/_____
Paul W. Grimm
United States District Judge